Now the next case of Falon v. Mercy Catholic Medical Center. Mr. Schor. Good morning, Your Honor. Alan Schor, attorney for Paul Falon. I'd like to reserve two minutes for rebuttal. Granted. Thank you. Paul Falon was terminated from his job of 20 years for one reason only. He did not belong to a religious congregation and could not produce a note from his clergy person. The complaint that we filed on his behalf, is that really I could say it was only because he didn't belong to a religious congregation? Or was it because he had filed things and, in fact, sent things to his employer, which you relied on in the complaint that showed he felt passionately about vaccines, shouldn't have to have them, and the court said that's not a religion. In other words, the court's decision wasn't focused on congregation or not congregation. It was trying to focus on is this a religious belief. I agree that that's what the court focused on, but that's not what Mr. Falon found. Well, wait a minute. Isn't that, in fact, what Mr. Falon said in his written request for religious exemption from influenza vaccination? I mean, he says in that submission, not the 20-page document that Judge Jordan just referenced, but he says, quote, in quotation marks, my conscience, that's the name of his religion, a belief system of strong moral and ethical convictions similar to religious belief. Isn't that what he has explicitly stated and submitted to his employer? He filed a essay to the employer. It's a question very susceptible to a yes or no answer. That's what he said to the employer, but that's not what he pled. All right. His court is now going to be referenced in the motion to displace the 20-page document that we've referred to. Because part of the factual background, yes, Your Honor. The factual background is that Mr. Falon, in 2012 and 2013, submitted a 22-page essay in response to the employer's request for reasons for seeking an exemption, and it was granted. So are you contending, I understand you contend, that it was improper for the district court here to rely upon a document which you specifically referenced in your complaint? We referenced the essay in the complaint not for the truth of the complaint, but to say that he had filed the essay with the employer who rejected it in 2014 only because Mr. Falon could no longer submit a personal statement of religious belief. He now was required to submit a statement from a clergy person. I thought you said in the complaint explicitly that the essay and letter, quote, explain his religious objection. We did. I wish I hadn't put that in there, Your Honor. And this is one of the reasons why I asked the court for permission to amend that one clause. Did you file a motion to amend your complaint? I certainly did. At what point? It was in my brief. We specifically stated in our brief and at oral argument, Your Honor, we asked the court for permission to amend, and in oral argument we asked for permission to amend. And the court even ruled that you filed a formal motion that set forth some additional information. No, I don't believe that we're required to file a motion to amend. When we had the motion to dismiss, we pointed out to the court that motions to dismiss are rarely granted, and when they are, the court should at least grant leave to amend. Did the court at any time have before it a submission from you indicating what your amended pleading was? No. No, Your Honor. What would you have pleaded? Have you since then filed anything that indicates how you would have amended the complaint? No, but, Your Honor, if I had simply amended the complaint to say Mr. Fallon has a sincerely held religious belief and had said nothing else, the court still would have dismissed the complaint because the court accepted an extrinsic document to say, well, I'm looking at this 22 page essay. How can you characterize as extrinsic something that you specifically raised and referred to, even if you didn't attach it to your complaint? How is that extrinsic? I referred to the essay. And especially when it's characterized, as was just pointed out by Judge Jordan a few moments ago. We referred to the essay to state that when Mr. Fallon was asked in 2012 and 2013 to state his reason for not getting the flu vaccine, he submitted this same essay. The essay was accepted in 2012 and 2013, and he submitted it again in 2014. Now, that is just a statement of background of fact. That's not why he was fired. Mr. Schor, we're kind of sliding around on different issues. I think right now we're just trying to get at the first issue, and the first issue that you raised was it was wrong for the district court to rely on this. And on that issue, I think I've heard you acknowledge that you do say in the complaint, Mr. Fallon provided an extensive and detailed essay to the defendant on multiple occasions explaining his sincerely held beliefs, the same essay twice. So, yes, it does give background, but you put it in there saying this is the explanation of his religious belief. No, I said his beliefs. Paragraph 8 pleads as follows in part. Mr. Fallon provided a 20-page addition to the exemption form explaining his sincerely held moral and ethical convictions. Correct. Okay. And he has equated elsewhere his moral convictions as similar to religion, right? Yes, exactly correct, Your Honor. Well, assume for a minute that the judge had said, okay, you know what, we'll treat this as a motion for summary judgment, and we'll look at this record evidence besides that. What would you have done differently? In other words, maybe this is just asking the same question that Judge Roth asked earlier. What would you have said differently? What would you have put in the record differently? Because we've got an indication that there's any other or better or different explanation of your client's sincerely held beliefs than that set of statements that he made in that essay, right? Yes, that's correct. If the complaint had really said, as it does, that he has a sincerely held religious belief, he's entitled to explain to the court later. You had plenty of opportunity at an oral argument before Judge Pappert to make that explanation versus to make additions, didn't you? I respectfully disagree, Judge Smith. Judge Pappert cut me off every single time I attempted to do that. I told the judge, we have a Harvard theologian who's provided us with an expert report. Mr. Fallon has been extensively interviewed. He will have no trouble at all showing that he has a sincerely held religious belief. The transcript of that oral argument will, of course, speak for itself. Let me ask you then, are you, by virtue of the argument you're making here, which is effectively to try to nullify or minimize the 20-page document we've been referring to, are you essentially conceding that there is not really any religious content to that document? Yes, Your Honor, it was not intended to be a statement of Mr. Fallon's religious beliefs. It doesn't exactly read like the 95 theses. He said when he submitted it that this is a statement of my moral and ethical beliefs, and Title VII says that my moral and ethical beliefs can equate to a religious belief, and the State of Pennsylvania said that my moral and ethical beliefs can be a religious belief. So is that your definition, then, of a religion? No, that's EEOC. There are various regulations like EEOC. Correct. There's case law describing religion, and it talks about a greater being. It talks about ethical and moral guidelines. It talks about a congregation. What is your definition of religion? Not my definition. In presenting this case, what is your definition of religion? 29 CFR 1605.1. In cases where the issue of religion does exist, the commission will define religious practices to include moral or ethical beliefs as to what is right or wrong, which are sincerely held with the strength of traditional religious views. The standard was developed by United States v. Seeger and Wells v. United States by the United States Supreme Court. That has been followed by courts in every circuit in this country. J.P. Harper relied heavily on the Africa opinion of this court. How can you bring your proper definition of religion within the definition, within the concept of religion that was embraced by this court in Africa? Okay. Because this court in Africa was not looking at a Title VII case. So we should have different standards of what religion is for purposes of Title VII and other constitutional purposes? As a matter of fact, yes, Your Honor. Why? Because Africa was a prisoner under a First Amendment case. In 1997, the Congress passed the Religious Land Use and Institutional Persons Act, 42 U.S.C. 2000 CC-1. If Mr. Africa today brought that case, it would be brought under a completely different law, and that law defines religion like Title VII defines religion. The Africa case is outdated, is overruled by... It's also precedent. It's not precedent, Your Honor. It's precedent for us. It is not precedent for Title VII, Your Honor. It's precedent for this court. It is not precedent for this court. I disagree. That is a First Amendment prisoner rights case. Do you know what precedent for this court is? I absolutely do. It's a case that this court has ruled upon. But this court was not ruling upon Title VII. You were ruling upon a different law. Title VII has been construed to be broader... Sir, the argument then is you can distinguish it. It's not to tell this panel it's not precedent. Your Honor, it is precedent for a First Amendment case involving a prisoner. So why... It is not precedent for a Title VII case, Your Honor. I respectfully disagree. It will help, Mr. Short, if you recognize that even though it seems perhaps inequitable to you, it will work better if when one of us starts to talk, you stop. Because then we won't speak over each other. And then one day when we want to go back perhaps and listen to the argument and refresh ourselves, it won't be just a cacophony of voices over each other. So I recognize it's a little bit of... It's not ordinary conversation, but it's the way it needs to work. Otherwise, we don't get to ask the questions we'd like to ask, and we can't get the answers we're seeking. And presumably that's why you're here and what you want to help us with. So with that understood, since you're relying on Title VII as a distinguishing feature, why don't you explain how Title VII, that EEOC regulation that you cited, which relies on the conscientious objector decisions like Seeger, how Title VII and that regulation should be read more broadly than the First Amendment. When Seeger itself and the other First Amendment cases, excuse me, conscientious objector cases are First Amendment cases, and in fact make the distinction between religion and somebody's personal moral code, that's the language Seeger uses, that there's a difference between someone's, quote, personal moral code, unquote, and a religion. Why would we look at the Title VII regulation and say, ah, that's bigger, when it's rooted in Seeger, which makes the very distinct distinction Africa does? Judge Papert, in making his decision, looked at the language of Africa and determined that Mr. Fallon must show a spiritual or otherworldly mandate. That language is not the law. It is not the law in First Amendment cases anymore. It is not the law in Title VII cases. Well, help me out, because I'm trying to ask you a specific question. You've said Title VII and the EEOC regulation have a broader definition for religion than First Amendment cases. That's kind of a remarkable proposition, that the regulations are bigger and more capacious than the Constitution of the United States. But taking that as your position, since the regulation is rooted in the Seeger decision explicitly, and the Seeger decision makes a distinction between personal moral codes and religious beliefs, which is exactly what Africa does, what is it you're relying on to say that the Title VII EEOC definition is broader than the First Amendment? At least 12 separate federal cases that I cited to the court, including the EEOC regulation, including a case from the circuit. And just, Your Honors, as I was preparing for today, there are two cases that came out in the last six weeks by Pennsylvania courts that address the Religious Language and Institutional Persons Act, which addresses the Africa situation. And it says specifically in those cases that the standard for religion is broader than the standard that was applied then and is expected to be broader. If prisoners have a broader definition than the law was in Africa, then certainly employees seeking a reasonable accommodation should be. These two cases just came out. I would appreciate the opportunity to supplement. All right. Thank you very much. We'll have you back on rebuttal. Thank you. Ms. Kirshenbaum. May it please the Court, Andrea Kirshenbaum on behalf of Aptly Mercy Catholic Medical Center. The allegations in Mr. Fallon's complaint failed to state a claim upon which relief could be granted under Title VII because Mr. Fallon did not plausibly plead allegations which supported an inference that he had a sincerely held religious belief. We certainly recognize, as this Court did in Africa, that few tasks that confront a court require more circumspection than that of determining whether a particular set of ideas constitutes religion. Yet, as the Supreme Court said in Wisconsin v. Yoder, the very concept of ordered liberty precludes allowing every person to make its own standards on matters of conduct. What is your definition of religion? What is my definition of religion? Well, I certainly rely on this Court's decision in Africa in setting forth the three useful indicia as to what constitutes religion. And that's what I would commend this Court to. I do believe that the Africa case is, in addition to being binding precedent, it certainly speaks to what the word religion means. Well, it's binding in the sense that, in a First Amendment context, yeah, it says what it says. But address directly your opponent's assertion that Africa didn't speak to Title VII and didn't try to speak to Title VII protections, and that there are courts that have said the definition under Title VII is broader than some of those other precedents. And I'm not aware that any of the cases that Mr. Fallon cited to supports that proposition. So I don't know what to say about that. But just as basic statutory construction, looking at what the word religion means under the First Amendment also speaks to what the word religion would mean under Title VII. And certainly we cited, too, on page 13 of our brief, the legislative history as to, in 1972, when the definition of reasonable accommodation was put in Title VII, and the proponent of that legislation said specifically that he was seeking to rely on what the definition was under the First Amendment and that those two definitions would be coextensive. The EEOC regulation does say, and you heard your colleague quote it, that the commission is going to look at religious practices to include, quote, moral or ethical beliefs as to what is right and wrong, sincerely held with the strength of traditional religious views. So it looks like the EEOC has got a standard which says if you believe it, and you believe it strongly, and it's about right and wrong, we'll look at it as a religion. Is that the right way to read that language from the regulation? No, Your Honor, I don't think it is the right way to read that language. And what else does it mean? So I think that you have to read not only that sentence, you have to read the entirety of that paragraph, which refers to Seger and to Welsh and incorporates the definitions set forth in those cases. Also, I think what it is that Mr. Fallon suggests, the EEOC itself doesn't embrace that position, and we did provide to the district court and to this court a citation to the EEOC compliance manual, which specifically states that beliefs are not protected merely because they are strongly held. Rather, religion typically concerns ultimate ideas about life, purpose, and death. Social, political, or economic philosophies, as well as mere personal preferences, are not religious beliefs protected by Title VII. What's that from? That's the EEOC's compliance manual. So the EEOC itself doesn't hold itself to the interpretation of the regulation that Mr. Fallon is advancing. Africa itself says that it's a non-comprehensive list, those three indicia that it identifies. Are there other indicia that we should be looking at here or thinking about? Because as you started out saying, this is a particularly delicate area. Certainly, Your Honor. I do think that that should be the starting point, Africa, and I think that Mr. Fallon's complaint and certainly the district court properly considered his 22-page essay, that the essay certainly speaks to what his beliefs are. I think that as an expert view on this, are they helpful, are they meaningful? In other words, taking you in the back door here to the procedural question, was it wrong for the district court to say, I'm not going to hear what the Harvard theologian says? I think that it was correct under the facts and circumstances of this case. Given the bare bones pleading, I think that the complaint really recite what the regulation is, pleads no facts as to what Mr. Fallon does or doesn't believe. As a matter of 12b-6, the complaint fails to state a claim upon which relief can be granted. What do you understand the record to show with respect to the efforts of the plaintiff to amend his pleading? Mr. Fallon included within his response brief a reference that should the court decide that the complaint is insufficient, that amendments would be requested. Also at oral argument, Mr. Schor did mention that as well. But I would commend the court, in addition to the cases cited in our brief to United States, X-REL-VISC, which is 728F3-228, which supports that a bare request to amend absent any indication of the ground on which amendment is sought does not satisfy the obligation under Rule 15. I think that's not necessarily where you all need to go, but he did not technically file a motion to amend the docket, reflects that, and he did not provide a proposed amendment. We did, in our motion to dismiss, make very clear what the basis of our concerns were with regard to the complaint. He could have filed an amended complaint as of that time. Your point is not that this was a bare bones complaint, but that by the attachment it was actually a very fulsome complaint. Is that right? So the complaint itself. Well, your point has to be that the essay is incorporated into, referred to, and effectively part of the pleading. Because if that isn't your position, you've got to lose, don't you? Your Honor, I think that we would win as to looking at just the four quarters of the complaint, but certainly looking at the essay, absolutely. The essay is explicitly relied upon. And our case law then permits the court's reliance upon that. Absolutely. Absolutely, Your Honor. And Mr. Fallon's argument that he merely recited it for purposes of historical, I think that just looking at the complaint just doesn't suggest that's the case. He specifically quoted it and relied upon it and referenced it as the basis for his religious belief and what he provided to the employer in order to support his claimed exemption from influenza vaccination. So I do think that the district court certainly, given that the record was fulsome, so we had the complaint, we had this 22-page single-spaced essay, and then the district court had a two-hour oral argument in this matter, during which Mr. Fallon's counsel was asked multiple times to identify what allegations in the complaint might support. Mr. Fallon's counsel indicates that he was frequently cut off and unable to set forth the positions that he wanted for Judge Packard's purposes. So I think that the record doesn't support that. If you look at the transcript, which we submitted in our supplemental appendix, I think that it shows that Judge Packard asked three different lines of inquiry. One, what is it that you allege in the complaint? Two, if I consider the essay, what is it in the essay that supports a sincerely held religious belief? And three, what are his religious beliefs? And what the response was, it was, we plead a sincerely held religious belief. And then there was a back and forth as to whether the magic words, sincerely held belief, was included. But there were multiple opportunities given to explicate what those beliefs were, and no information was provided to the district court during that very voluminous oral argument. So I think given how heavy the record was, even at the 12 v. 6 phase of this case, the district court certainly did not abuse its discretion in denying the request that Mr. Schor provided on the record and included in his brief to amend his complaint. I think clearly he had every opportunity, and that any amendment would have been futile. And I also commend the court to the oral argument transcript at the supplemental appendix 102 to 103, where Mr. Schor said, quote, he does not have a religious belief. He has a strong moral or ethical conviction similar to a religious belief. And I think ultimately, under Title VII, he needs to come forth with a complaint that alleges that his termination or the failure to accommodate was due to his religious belief, not to an ethical or a moral belief. And obviously that is supported by Africa. Africa is discussed very heavily in our briefs. And certainly if the court has any additional questions, I'm happy to answer them. Thank you very much. Thank you. We'll hear from Mr. Schor. Mr. Fallon did allege that he submitted the essay. He also alleged that Mr. Fallon was never asked for further support of his religious beliefs by either his former employer. His letter was just a statement of why he didn't want the flu vaccine. It's in the complaint that they never allowed him to explain his religious beliefs. I thought it was the case that there had been, after the hospital said we're not going to accept this as adequate anymore, there was a period of back and forth between your client and the hospital where they said, you know, you're going to have to do this or we're going to have to fire you. They didn't fire him the next day. There was a month of back and forth. Am I right about that? There was one back and forth. They said, we need to hear from your clergy person. And he said, I don't have a clergy person. What do you want me to do? And they said, you're fired. That's the sum and substance of the communication between him and his employer. And that's what we alleged. That moral argument. Yes. When you're quoted as saying he has a strong ethical or moral belief. Now, was that about vaccine? Yes, exactly. What other items did you mention that he had a strong ethical or moral belief? I didn't because that was why we were there. He objected to the flu vaccination. And he was asked why by his employer. And he presented his reasons why, the same reasons they had accepted in 2012 and 2013. So in the record there is nothing about any other strong ethical or moral belief except about. We've never had a chance, Your Honor, to make that record. We filed a complaint. We'll make a record. We have a theologian. He can be deposed. He'll be able to explain his religious beliefs. He has religious beliefs. The employer has put nothing in the record beyond his belief on vaccines, right? I don't believe that's correct, Your Honor. But I don't believe that for purposes of pleading that he has to say anything beyond he has a sincerely held religious belief. We cited the EEOC definition. If that definition is not correct, let us amend. What does Iqbal mean if it doesn't mean you've got to do something besides plead a legal conclusion? You've got to give enough facts that somebody can actually understand what you're talking about. And the assertion that a theologian could come in and tell you why Mr. Fallon's belief is religious prompts me to wonder why Mr. Fallon's own repeated and passionately stated at length statements aren't, in fact, the very best basis on which to understand what his beliefs are. Not what somebody from Boston thinks, but what the man himself said, said repeatedly and said at length. We neither attached the complaint, the essay, nor relied on it. Which you referred to? Yes, of course we referred to it. It's a fact in the case. You say you didn't rely on it, but I've already read you the specific language from paragraph eight, which certainly suggests reliance upon it. Well, Mr. Fallon submitted his statement of his moral beliefs. We don't say his religious beliefs. I don't think this is your strongest argument. I agree, but I have a more answering question than that, Your Honor. You don't seem to be adding anything to what you've already said. Your Honor, I understand your position. The matter, if it was a summary judgment, if there were extrinsic documents, we should have had an opportunity to at least show Mr. Fallon's religious beliefs. We've heard you on that as well, Mr. Shor. Thank you very much. Thank you to counsel. We'll take the matter under advisement.